UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

**HIEN V. QUACH, ET AL.**             **CASE NO.  6:19-CV-01442**

**VERSUS**                            **JUDGE ROBERT R. SUMMERHAYS**

**ST. MARTIN VI, LLC**                **MAGISTRATE JUDGE DAVID J. AYO**

### FINDINGS OF FACT

Plaintiffs Hien V. Quach and Loi Van Nguyen filed this suit against their former employer, St. Martin VI, LLC, asserting claims under the Jones Act and general maritime law for negligence, unseaworthiness, and maintenance and cure.[1] Plaintiffs elected to proceed under the Court's admiralty jurisdiction.[2] Subsequent to the filing of the suit, Nguyen died from causes unrelated to the incident sued upon.[3] Because a proper party has not yet been substituted for Nguyen, these findings pertain solely to the claims of Plaintiff Quach (hereinafter, "Plaintiff" or "Quach").

Quach alleges that on September 10, 2019, while working as a deckhand aboard Defendant's shrimping vessel, the *M/V St. Martin VI*, he was injured when the vessel struck an oilfield platform.[4] According to Quach, at the time of the allision, the captain of the vessel had been drinking and was travelling at approximately forty miles per hour in the dark.[5] Quach testified that he was sorting shrimp on the aft deck at the time and was

---

[1] ECF No. 1.
[2] *Id.* at ¶¶ 1, 16.
[3] ECF No. 6 at 2.
[4] ECF No. 1 at 2. Plaintiff testified that he had been aboard the vessel for about five days at the time of the allision. *See* Nov. 1, 2023, Transcript of evidentiary hearing ("Transcript").
[5] Transcript; *see also* ECF No. 6-1 at 1

therefore unaware of the impending allision. When the captain allided with the platform, Quach was thrust forward, causing him to fall and hit his back on an appurtenance of the vessel, resulting in injuries to his back, neck and left shoulder.[6] According to Quach, the captain did not report the allision to the U.S. Coast Guard because he had been drinking.[7] A week after the allision, Quach sought medical treatment at Gulf Regional Occupational Medical Center of Acadiana.[8] From November 4, 2019 to August 14, 2020, Quach received chiropractic treatment for his injuries from Dr. Ryan Vidrine.[9]

On January 6, 2020, the Clerk of Court entered a preliminary default against Defendant for failure to appear or otherwise defend this suit.[10] On May 20, 2021, the Court granted Plaintiff's Motion for Partial Default Judgment, finding Defendant "was solely at fault and 100% liable for the allegations of injuries/damages claimed by plaintiff, Hien V. Quach, as a result of the allision on September 10, 2019."[11] On November 1, 2023, the Court heard evidence to determine Quach's damages.[12] After hearing Plaintiff's testimony, and considering the pleadings and exhibits in the record as well as the arguments of Plaintiff's counsel with respect to damages, the Court will award damages as set forth below.

---

[6] Transcript; *see also* ECF No. 6-1 at 2; ECF No. 18-3 at 36.
[7] *See* Transcript.
[8] ECF No. 19 at ¶ 11; ECF No. 18-3 at 36.
[9] ECF No. 23-14 at 2-5; *see also* Transcript.
[10] ECF No. 5.
[11] ECF No. 8.
[12] ECF No. 20.

## Jones Act[13]

1. **Past Medical Expenses**

The Court finds Quach has incurred $4,447.00 in past medical expenses.[14]

2. **Lost Wages**

Quach testified that he was to earn $5,000.00 (net) per voyage, and he anticipated working seven to eight voyages per year. Quach resumed employment with a new employer in March of 2022, and he earns $4,000.00 per month. Thus, from the time of the accident (September 10, 2019) until Quach began his new employment (March of 2022), the Court calculates Plaintiff's lost wages at $100,000.00. From March of 2022 through trial on November 1, 2023, the Court calculates an additional $20,000.00 was owed in lost wages. Therefore, the Court will award a total of $120,000.00 in past wages.[15]

3. **General Damages**

Quach was in active treatment for eleven months, but still complained of pain at the time of trial. He further testified to the mental anguish he suffered and that he had to discontinue treatment due to economic necessity. The Court will award $50,000.00 for pain, suffering and mental anguish.[16]

---

[13] "A seaman is entitled to recovery under the Jones Act . . . if his employer's negligence is the cause, in whole or in part, of his injury." *Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331, 335 (5th Cir. 1997). A Jones Act employer is legally responsible for the negligence of its employees, provided the negligent employee is acting within the course and scope of his or her employment. 46 U.S.C. § 30104(a) (extending the protections of the Federal Employer's Liability Act to seamen); 46 U.S.C. § 51 ("Every common carrier by railroad . . . shall be liable in damages . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or *employees* of such carrier. . . .") (emphasis added); *see also Beech v Hercules Drilling Co., LLC*, 691 F.3d 566, 571 (5th Cir. 2012).

[14] ECF No. 23-14 at 2-5. No evidence was offered regarding future medical expenses.

[15] No evidence was offered in support of future lost wages.

[16] *See e.g.*, *Scott v. Haggerty*, CIV.A. 12-1882, 2013 WL 1856074, at *7 (E.D. La. Apr. 30, 2013); *All v. Safeco Ins. Co.*, 2017-0632, p. 4 (La.App. 1 Cir. 11/1/17); 235 So.3d 1134, 1137.

## **Maintenance and Cure**

The Court finds that Quach is entitled to maintenance and cure. As to maintenance, Quach testified that at the time of the incident, he spent approximately $200.00 per month for food and $500.00 per month for rent. He reached maximum medical improvement ("MMI") on March 4, 2020.[17] Quach travelled to twenty-seven medical appointments from the date of the accident until he reached MMI.[18] The Court finds Quach is entitled to maintenance at a rate of $25.00 per day from the date of the accident through the date of MMI, for a total maintenance award of $4,400.00.[19]

As to cure, Quach would be entitled to $3,682.00 in medical expenses incurred from the date of the accident until he reached MMI.[20] However, because the Court awarded all past medical expenses under the Jones Act (including $765.00 in medical expenses incurred post-MMI, which would be deemed "palliative" for purposes of maintenance and cure), no additional recovery for cure is available.

Finally, the Court finds Defendant deliberately failed to investigate Quach's claim of injury, deliberately failed to respond to this suit, and deliberately failed to provide Quach with maintenance and cure. Thus, the Court finds Defendant callously and willfully

---

[17] *See* Transcript; *see also* ECF No. 19 at 4, ¶ 19.
[18] *See e.g.*, ECF No. 23-14 at 2-3.
[19] "Maintenance is the equivalent of the food and lodging to which a seaman is entitled while at sea. . . . Maintenance is neither the substitute for wages nor is it to be considered in lieu of a seaman's wages, in whole or in part." *Morel v. Sabine Towing & Transp. Co., Inc.*, 669 F.2d 345, 346 (5th Cir. 1982). The general rule is that maintenance may not be deducted from an award for past lost wages. *See e.g. Ceja v. Mike Hooks, Inc.*, 690 F.2d 1191, 1197 (5th Cir. 1992), *overruled on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir.1997); *Phillips v. Western Co. of North America*, 953 F.2d 923, 929 (5th Cir. 1992).
[20] ECF No. 23-14 at 2-3, 5.

disregarded its maintenance and cure obligation. For these reasons, punitive damages will be awarded in the amount of $70,000.00.[21]

### Summary

For the reasons set forth herein, the Court will issue a Final Judgment in favor of Plaintiff Hien V. Quach and against Defendant St. Martin VI, LLC, in the total amount of $248,847.00. Prejudgment interest will be awarded from the date of injury (Sep. 10, 2019) to the date of Judgment at the rate of 5.16%, which is the most recently quoted rate for one-year constant maturity treasury bills.[22] Post-judgment interest is owed in accordance with 28 U.S.C. § 1961.

To the extent Plaintiff seeks various costs (*e.g.* for deposition testimony), he must file a Bill of Costs within thirty days of issuance of this judgment.[23]

THUS DONE in Chambers on this 17th day of April, 2024.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[21] No request has been made for attorney fees.
[22] Prejudgment interest "is awarded almost as a matter of course in cases tried to a judge under general maritime principles." *Wyatt v. Penrod Drilling Co.*, 735 F.2d 951, 955-56 (5th Cir. 1984); *see also Jauch*, 470 F.3d at 215. In maritime cases, "the trial court has the discretion to deny prejudgment interest only where peculiar circumstances would make such an award inequitable." *Corpus Christi Oil & Gas Co. v. Zapata Gulf Marine Corp.*, 71 F.3d 198, 204 (5th Cir. 1995). It is also within the trial court's discretion to select an equitable rate of prejudgment interest. *See e.g. Reeled Tubing, Inc. v. M/V Chad G*, 794 F.2d 1026, 1029-30 (5th Cir. 1986); *United States v. Cent. Gulf Lines, Inc.*, 974 F.2d 621, 630 (5th Cir. 1992). In maritime cases in this Circuit, prejudgment interest is ordinarily awarded from the date of loss or injury. *Reeled Tubing* at 1028; *Kiwia v. M/V OSLO BULK 9*, 541 F.Supp.3d 696, 712 (E.D.La. 2021); *Bommarito v. Belle Chasse Marine Transportation*, 606 F.Supp.3d 304, 319 (E.D.La. 2022).
[23] *See* 28 U.S.C. §§ 1920, 1923, 1924; Fed. R. Civ. P. 54(d); LR54.3.